UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at ASHLAND

CIVIL ACTION NO. 16-9-HRW

GOLDEN LIVING CENTER-VANCEBURG
a/k/a GGNSC VANCEBURG, LLC,                                              PLAINTIFFS,

v.                      **MEMORANDUM OPINION AND ORDER**

MAURICE REEDER, JR., *Individually*
*and as Administrator of*
THE ESTATE OF MAURICE REEDER,                                            DEFENDANT.

This matter is before the Court upon Plaintiffs' Motion to Compel Arbitration and Enjoin Defendant [Docket No. 4] and Defendant's Motion to Dismiss [Docket No. 6]. The motions have been fully briefed.

## I. BACKGROUND

This case arises from Maurice Reeder's residency at the Golden Living Center in Vanceburg, Kentucky from October 11, 2011 until early 2015. While residing at the facility, Mr. Reeder allegedly suffered physical and emotional injuries due to inadequate care [Docket No. 1-2]. His son, Defendant Maurice Reeder, Jr., per Order of the Lewis District Court, was appointed as his Emergency Limited Guardian before his admission to the nursing facility [Docket No. 6-3]. Defendant Reeder filed a state court action against the Plaintiffs in Lewis Circuit Court, *Maurice Reeder, Jr. v. Golden LivingCenter-Vanceburg, et al.*, Commonwealth of Kentucky, Lewis Circuit Court, Lewis County, Kentucky, Case No.: 15-CI-157. In his state court action, Reeder alleges claims for negligence, medical negligence, corporate negligence,

and violation of long term care resident's rights [Docket No. 1-2]. In addition to the named Plaintiffs in the action pending before this Court, the Defendant named Kari Shields, M.D. and Bellefonte Primary Care of Grayson as defendants in his state court action. *Id.*

In response to the action filed in the Lewis Circuit Court, the Plaintiffs filed the instant suit, asserting that the Defendant's state court claims are subject to an Arbitration Provision within the Admission Agreement signed by Mr. Reeder on behalf of his father upon his admission to the nursing facility. Notably, Dr. Shields and her practice are not included as Plaintiffs in the action before this Court. The Plaintiffs invoke this Court's diversity jurisdiction and seek relief under § 4 of the Federal Arbitration Act (FAA).

The "Covered Disputes," section of Arbitration Provision provides as follows:

> This Agreement applies to any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility or the Admissions Agreement between the Parties that would constitute a legally cognizable cause of action in a court of law sitting in the state where Facility is located. Covered Disputes include but are not limited to all claims in law or equity arising from...a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards.

[Docket No. 1-1, pg. 2 at ¶ 3].

Plaintiffs assert that this arbitration agreement covers all of the Defendant's state court claims. As such, the Plaintiffs seek an order from this Court compelling the

Defendant to submit his claims to binding arbitration and enjoining him from proceeding with his action in Lewis Circuit Court.

## II. ANALYSIS

### A. Defendant's Motion to Dismiss

Defendant makes three arguments in support of his Motion to Dismiss. When presented with similar if not identical facts, multiple courts from this District as well as the Western District of Kentucky have considered and rejected the precise arguments the Defendant now makes. In addition, the Sixth Circuit and other Circuits have previously heard, and also rejected, many of the Defendant's arguments. Based on the overwhelming weight of the relevant precedent and lack of any novel, meritorious arguments, this Court will likewise deny the Defendant's motion.

First, Defendant argues that Dr. Kari Shields and Bellefonte Primary Care of Grayson are indispensable parties to this action under Rule 19, and that the Plaintiffs' failure to join them warrants dismissal pursuant to Fed. R. Civ. P. Rule 12(b)(7).

"Rule 19 of the Federal Rules of Civil Procedure establishes a three-step analysis for determining whether a case should proceed in the absence of a particular party." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001). The first step is to determine whether a party not joined is necessary under Rule 19(a). *Id.* If the party is necessary, the court must next determine whether joinder is feasible, considering whether the party is subject to personal jurisdiction and if joinder will destroy the court's subject-

matter jurisdiction. *Id.* Finally, if joinder will destroy subject-matter jurisdiction—for instance, through joinder of a non-diverse party—the court must examine whether the party is "indispensable." *Id.*

This Court must first consider whether Dr. Shields and her practice are necessary parties. They are necessary parties if they "claim[ ] an interest relating to the subject of the action and [are] so situated that the disposition of the action in [their] absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(2)(ii).

In support of its motion, Defendant cites cases in which where courts have determined that administrators are "necessary parties" because administrator defendants are "arguably covered by the agreement," they could be the victim of inconsistent obligations due to a state court that refuses to enforce an agreement that a Federal court enforces. In these cases, the court deemed the administrator "necessary."

Defendant's reliance upon these cases is baffling, as they argue vociferously that Dr. Shields and her practice did not assert the ADR Agreement in their answer, and are not parties to the ADR Agreement. If they are not party to the ADR Agreement, Dr. Shields and her practice will face no inconsistencies in interest or obligation to the enforcement of that agreement. There is no risk of even the possibility of inconsistent enforcement and, therefore, they are not "necessary" parties to this litigation.

Even if this Court were to deem Dr. Shields and her practice as "necessary" parties, the question remains as to whether they are "indispensable" under Rule 19(b). As residents of Kentucky, their joinder would destroy diversity and, hence, divest this Court

4

of jurisdiction. Under Rule 19(b), "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." A party is neither necessary nor indispensable simply because they are an alleged joint tortfeasor. *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 8 (1990). Rule 19(b) provides four factors this Court must evaluate: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Fed. R. Civ. P. 19(b). The Sixth Circuit considered arguments similar to those the Defendant now makes in *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200-06 (6th Cir. 2001) and held that non-diverse individual Defendants involved were not indispensable parties in a parallel federal court action to compel arbitration. In *PaineWebber*, the plaintiff sought to compel the heirs of its former employee to submit their state-law tort claims to arbitration. Like the instant case, the plaintiff in *PaineWebber* filed a diversity action to compel arbitration in federal court and, as here, the defendant objected to the suit on the grounds that a non-diverse individual sued in the underlying state action was indispensable. *Id.* The Sixth Circuit weighed the Rule 19(b) factors and rejected the defendant's argument, stating:

> Although we acknowledge the seriousness of [the defendant's] concerns, his characterization of the risks fails to take into account several important factors. These considerations indicate that the potential prejudice to [the

5

> defendant] or [the nonjoined party] if this action proceeds
> without [the nonjoined party] is minimal.
> As an initial matter, the possibility of having to proceed
> simultaneously in both state and federal court is a direct
> result of [the defendant's] decision to file suit naming [the
> plaintiff] and [the nonjoined party] in state court rather than
> to demand arbitration under the [parties'] Agreement.
> . . . .
> Even if the parallel proceedings were not the result of [the
> defendant's] pending state court action, the possibility of
> piecemeal litigation is a necessary and inevitable
> consequence of the FAA's policy that strongly favors
> arbitration.
> . . . .
> [The possibility that] the federal and state courts will reach
> conflicting interpretations of the arbitration
> clauses does not present the degree of prejudice necessary to
> support a conclusion that [the nonjoined party] is an
> indispensable party.

*Id.* at 202–03 (internal citations omitted).

The same analysis applies here. This Circuit's precedent is clear. The possibility of inconsistent rulings coupled with the burden on the defendant in pursuing duplicative litigation is not sufficiently prejudicial to find a party indispensable. *PaineWebber*, 276 F.3d at 202–03.

Defendant's second argument in support of its dispositive motion is that the FAA is not implicated because there is no valid agreement to arbitrate. Specifically, Defendants contends that Maurice Reeder, Jr. did not have authority as his father's limited guardian to enter into the arbitration agreement.

Defendant appears to suggest that because an emergency guardianship is instituted prior to a full guardianship proceeding, an emergency guardian has less authority than a full

6

guardian. This position has no basis or support in statutory or common law, and, would essentially nullify the powers of an emergency guardian.

The relevant statute provides:

The court may exercise the powers of a limited guardian or limited conservator or may appoint an individual or agency to exercise such powers if, during the pendency of a proceeding for a determination of partial disability or disability or an appeal therefrom it appears that there is danger of serious impairment to the health or safety of the respondent ... if immediate action is not taken.

KRS § 397.740(1).

This section provides no limitations on the powers of a "temporary" guardian, as suggested by the Defendant. In fact, the statute explicitly states that the emergency guardian possesses the same powers as a limited guardian. Further, an examination of the Emergency Guardianship order itself clarifies the powers granted to the Emergency Guardian. Maurice Reeder, Jr. was given the authority to dispose of property, execute instruments, enter into contractual responsibilities, to determine living arrangements and consent to medical procedures.

Moreover, there are no limitations written into the order by the judge, and the only power not granted to the guardian is the handling of day to day financial responsibilities. No further order is necessary to grant the emergency guardian the authority necessary to sign the arbitration agreement.

In further denouncing the validity of the arbitration clause, Defendant argues that whatever authority Mr. Reeder had was not broad enough to bestow upon him authority to sign an arbitration agreement on behalf of his father. In

7

support of this argument, Defendant cites *Extendicare Homes, Inc. v. Whisman*, 478S.W.3d 306, (Ky. 2015), *as corrected* (Oct. 9, 2015), *rehearing denied* (Feb. 18, 2016), *petition for Certiorari filed* (July 1, 2016). In *Whisman*, the Kentucky Court held that a power of attorney granting the power to "institute or defend suits concerning my property rights" did not confer authority to enter into a pre-dispute arbitration agreement because arbitration is not a "suit" as the term is commonly understood, but rather a process designed to avoid suits. *Id.* at 323.

As *Whisman* painstakingly percolates through the federal judicial system, federal Court in Kentucky have held on several separate occasions that *Whisman* violates the Federal Arbitration Act. *See*, *Brandenburg Health Facilities, LP v. Mattingly*, 2016 U.S. Dist. LEXIS 79729 (W.D. Ky. June 20, 2016), *Diversicare Highlands, LLC v. Lee*, 2016 U.S. Dist. LEXIS 80905 (W.D. Ky. June 21, 2016) and *Preferred Care of Del., Inc. v. Estate of Hopkins*, 2016 U.S. Dist. LEXIS 81620 *11 (W.D. Ky. June 22, 2016).

For example, in *Brandenburg*, the District Court declined the apply *Whisman* "to the extent that it conflicts with U.S. Supreme Court precedent by treating an agreement to arbitrate differently than any other contract." 2016 U.S. Dist. LEXIS at *13. The Court explained that, despite *Whisman*'s holding that a power of attorney must expressly grant the authority to enter into an arbitration agreement, "[t]he FAA's purpose . . . is to place arbitration agreements upon the same footing as other contracts." *Id.* at *12 (internal quotation omitted). Thus, as *Whisman* violated the FAA and United States Supreme Court precedent, the Court

found that the arbitration agreement signed in connection with the decedent's admission to a nursing home was enforceable.

Likewise, in *Hopkins*, the Court again found that "[a]pplying *Whisman* to invalidate the arbitration agreement signed by Decedent's husband would run afoul of the FAA." Because *Whisman* contravened the FAA, the Court declined to apply its rule regarding the authority required to enter into arbitration agreement and enforced the arbitration agreement signed in connection with the decedent's admission to a nursing home. 2016 U.S. Dist. LEXIS at *12.

Moreover, *Whisman* has little relevance in this instance. A guardian is a very different creature than a Power of Attorney and, as such, *Whisman* is not dispositive in this case.

Finally, in seeking dismissal, Defendant argues that this Court should abstain from from exercising jurisdiction in this case under the *Colorado River* doctrine because similar litigation is pending in state court. "Abstention from the exercise of federal jurisdiction is the exception, not the rule," *Colorado River Water Conservation Dist.*, 424 U.S. 800, 813 (1976), because federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Id.* at 817. Abstention is an "extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Id.* at 813. One court described the circumstances in which abstention is appropriate as follows:

> Under Colorado River, the threshold issue is whether there are parallel proceedings in state court. *Crawley v. Hamilton Cnty. Comm'rs,* 744 F.2d 28, 31 (6th Cir.1984). Once a court has determined there are parallel proceedings, the Supreme Court identified eight factors that a district court must consider when deciding whether to abstain from exercising its jurisdiction due to the concurrent jurisdiction of state court. *PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 206 (6th Cir.2001). Those factors are: (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *Id.*

*GGNSC Vanceburg, LLC, v. Taulbee,* Civil Action No. 5:13–cv–71–KSF, 2013 WL 4041174, *2 (E.D.Ky. Dec.19, 2013). Importantly, "the balance [is to be] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 16 (1983).

A plethora of courts in this district have refused to abstain under circumstances that are substantially similar to those found in this case. *Golden Gate Nat. Senior Care, LLC v. Addington,* No. 14-CV-327-JMH, 2015 WL 1526135, at *5 (E.D. Ky. Apr. 3, 2015); *Preferred Care, Inc. v. Belcher,* 5:14–cv–107–JMH, Memorandum Opinion and Order, DE 9 (E.D.Ky. March 31, 2015); *Richmond Health*

*Facilities–Kenwood, LP v. Nichols,* Civil Action No. 5:14–141–DCR, 2014 WL 4063823 (E.D.Ky. Aug.13, 2014); *Brookdale Senior Living, Inc. v. Caudill,* Civil Action No. 5:14–098–DCR; 2014 WL 3420783 (E.D.Ky. July 10, 2014); *GGNSC Vanceburg, LLC, v. Hanley,* Civil Action No. 0:13–106–HRW, 2014 WL 1333204 (E.D.Ky. Mar.28, 2014); *GGNSC Vanceburg, LLC, v. Taulbee,* Civil Action No. 5:13–cv–71–KSF, 2013 WL 4041174 (E.D.Ky. Dec.19, 2013).

It is clear that abstention under *Colorado River* is not warranted in this case. First, the state court has not assumed jurisdiction over any res or property. Second, nothing indicates that this Court would be less convenient, as the Defendant filed the state court action in the Fayette Circuit Court. Third, the desire to avoid piecemeal litigation is insufficient to overcome a strong federal policy in favor of arbitration. *PaineWebber*, 276 F.3d at 207. Fourth, while the state court proceeding was filed shortly before the present action, the time difference is minor. Moreover, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. The state court matter, according to the Plaintiffs, has not proceeded beyond the initial pleadings. [DE 5 at 16.] Fifth, while the Defendant is challenging the enforceability of the arbitration agreement on state law grounds, the Sixth Circuit has held that where the FAA applies, this factor tilts in favor of a court exercising jurisdiction. *PaineWebber*, 276 F.3d at 208. The sixth factor is the strongest element favoring abstention, as the state court is adequate to protect the

Plaintiffs' rights because a state court is bound by the requirements of the FAA under the Supremacy Clause. *Golden Gate*, 2015 WL 1526135 at *6. The seventh factor is similar to the fourth factor, and both weigh in favor of exercising jurisdiction because there is no meaningful difference in the progress of the state and federal actions in this matter. Finally, while there is concurrent jurisdiction, the eighth factor favors abstention only marginally, if at all. *Id.* at 7. The existence of concurrent jurisdiction is "insufficient to justify abstention" under the circumstances. *PaineWebber*, 276 F.3d at 208-09.

It is clear that this case does not present the type of exceptional circumstances that would justify abstention. This Court sees no reason to depart from the well-reasoned decisions of other courts in this District that also refused to abstain.

### B. Plaintiff's Motion to Compel Arbitration

Turning to the Plaintiffs' Motion to Compel Arbitration, they request that this Court enforce the arbitration agreement by requiring the Defendant to arbitrate his state court claims. "When considering a motion to ... compel arbitration under the" FAA, courts engage in a four-step analysis. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000). The first is to "determine whether the parties agreed to arbitrate." *Id.* If so, then the second step is to consider the scope of the agreement. *Id.* Third, "if federal statutory claims are asserted, [the Court] must consider whether Congress intended those claims to be nonarbitrable." *Id.* Finally, "if the court

concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Id. See also Compuserve, Inc. v. Vigny Int'l Finance, Ltd.*, 760 F.Supp. 1273, 1278 (S.D.Ohio 1990).

In this case, the Plaintiffs satisfied their initial burden by presenting the arbitration agreement. It is clear that the claims arising out of Mr. Reeder's residency at the nursing facility that the Defendant alleges in his state court action, namely negligence, medical negligence, corporate negligence, and violations of long term care resident's rights, clearly fall within the broad scope of the signed arbitration agreement. Defendant's arguments against the validity of the agreement were considered and rejected *supra*.

Thus, the arbitration agreement in this case is valid and enforceable. The Defendant's state court claims must be submitted to arbitration according to the agreement's terms.

Having found that Defendant must submit his claims to arbitration, the question remains whether this Court should enjoin him from pursuing her parallel action in state court. The Court finds that such an injunction is necessary, and the Defendant is enjoined from proceeding in Lewis Circuit Court. "Although the FAA requires courts to stay their own proceedings where the issues to be litigated are subject to an agreement to arbitrate, it does not specifically authorize federal courts to stay proceedings pending in state courts." *Great Earth Companies, Inv. v. Simmons*, 288 F.3d 878, 893 (6th Cir. 2002) (internal citations omitted). For this

reason, "the District Court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti Injunction Act." *Id.* Pursuant to the Anti–Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

An injunction in this case "properly falls within the exception for injunctions 'necessary to protect or effectuate [this Court's] judgments.' " *Great Earth*, 288 F.3d at 894. The Court has determined that the parties entered into a binding arbitration agreement covering the scope of Defendant's claims. Having made such a determination and compelling him to submit to arbitration, it is necessary to enjoin Defendant from pursing his claims in any alternative forum, including state court. Otherwise, she would be permitted to circumvent her arbitration agreement and in doing so, circumvent this Court's judgment that he be compelled to arbitrate his claims. Accordingly, the Court will order that Defendant be enjoined from proceeding with his pending state-court action.

### III. CONCLUSION

A valid and binding arbitration agreement was executed. This matter must be referred to arbitration.

Accordingly, **IT IS HEREBY ORDERED**:
(1)     Plaintiffs' Motion to Compel Arbitration and to Enjoin Defendant [Docket No. 4] be **SUSTAINED**;
(2)     Defendant's Motion to Dismiss [Docket No. 6] be **OVERRULED**;

(3) Defendant shall prosecute all of her claims arising out of Maurice Reeder's residency at Golden Living Center - Vanceburg in accordance with the terms of the arbitration agreement ; and

(4) that this matter is hereby **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of the Court.

This Court will retain jurisdiction over this matter for the purpose of enforcing any arbitration award and all other issues that may become germane.

This 1st day of September, 2016.



Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge